UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN V.,

                              Plaintiff,

v.                                                               1:20-CV-0997
                                                                                 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                   MELISSA KUBIAK, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                    ANDREEA LECHLEITNER,
OFFICE OF REG'L GEN. COUNSEL – REGION II   ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 16.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

A.   **Factual Background**

Plaintiff was born in 1980.  (T. 58.)  He completed high school.  (T. 195.) Generally, Plaintiff's alleged disability consists of major depressive disorder.  (T. 59.) His alleged disability onset date is October 18, 2016.  (T. 58.)  His date last insured is December 31, 2020.  (*Id*.)  His past relevant work consists of restaurant manager, kitchen manager, and sales manager.  (T. 24, 195.)

B.   **Procedural History**

On October 18, 2016, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 58.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On April 15, 2019, Plaintiff appeared before the ALJ, Martha Bower.  (T. 30-57.)  On May 21, 2019, ALJ Bower issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-29.)  On June 1, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-25.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020 and Plaintiff had not engaged in substantial gainful activity since October 18, 2016.  (T.14.)  Second, the ALJ found Plaintiff had the severe impairments of: bipolar disorder, an alcohol use disorder, and a cannabis use disorder.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or

medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with additional non-exertional limitations. (T. 16.) The ALJ found Plaintiff had limitation in concentration, persistence or pace with the ability to understand, remember, and carry out simple tasks. (*Id*.) The ALJ further found Plaintiff was limited to object-oriented tasks with only occasional work-related interactions with supervisors, co-workers, and the general public. (*Id*.) Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-25.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ impermissibly cherry-picked the opinion of non-examining State agency medical consultant by affording it "substantial evidentiary weight" and then outright ignoring its disability-supporting limitations. (Dkt No. 11 at 16-19.) Second, Plaintiff argues the ALJ erred at step two, and in subsequent steps, when she failed to evaluate Plaintiff's diagnoses of post-traumatic stress disoder ("PTSD"), generalized anxiety disorder, panic disorder, and borderline personality disorder separately. (*Id*. at 19-23.) Third, and lastly, Plaintiff argues the ALJ impermissibly relied on mischaracterizations and Plaintiff's noncompliance with medical treatment to find Plaintiff's allegations were inconsistent with the evidence of record,

3

after failing to properly evaluate his mental health impairments. (*Id*. at 23-25.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ's mental RFC was supported by substantial evidence, including medical opinions, treatment notes, and activities of daily living. (Dkt. No. 12 at 5-14.) Second, and lastly, Defendant argues Plaintiff failed to establish that he has additional limitations from his PTSD, generalized anxiety disorder, and borderline personality disorder that were not included in the RFC finding. (*Id*. at 14-16.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Moderate Limitations and Unskilled Work

Plaintiff argues the ALJ failed to include the "disability-supporting limitations" provided by the non-examining State agency medical consultant to whom she afforded "substantial evidentiary weight." (Dkt. No. 11 at 16-19.) Contrary to Plaintiff's assertion, the limitations provided were not "disability-supporting" and the ALJ included the doctor's opined limitations in the RFC.

On January 4, 2017, non-examining State agency medical consultant, Dr. C. Butensky, reviewed Plaintiff's record and opined Plaintiff had a chemical dependence impairment in reported early remission and a moderately severe comorbid psychiatric impairment. (T. 65.) Dr. Butensky opined Plaintiff retained the capacity to perform simple and complex job tasks, but had mild to moderate limitations in his ability to sustain attention and concentration, adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors. (*Id*.) Dr. Butensky further opined Plaintiff was moderately limited in his ability to complete a normal workday and

6

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 67.) Dr. Butensky opined Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited, and his ability to be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others was moderately limited. (*Id*.)

The ALJ afforded substantial weight to Dr. Butensky's opinion reasoning the limitations provided were consistent with the evidence in the record, both at the time of the doctor's January 2017 review and submitted thereafter. (T. 23-24.) Specifically, the ALJ concluded Dr. Butensky had "detailed knowledge of the standard of disability as set forth by the Commissioner." (T. 23.) The ALJ also reasoned the opinion was consistent with Plaintiff's conservative course of treatment and "relatively high" activity level. (*Id*.) Overall, the ALJ concluded Dr. Butensky's opinion was consistent with the RFC. (*Id*.)

Plaintiff's assertion, that Dr. Butensky's mild to moderate limitations equate to disabling functionality, is incorrect. Plaintiff argues, without citation to any authority, the doctor's moderate limitations in certain areas of mental functioning equate to being off task more than ten percent of the time and absent more than one day of work per month. (Dkt. No. 11 at 17.)

The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple*

*v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018) (ALJ's mental RFC limiting plaintiff to simple routine work properly accounted for opinions plaintiff had moderate limitations in various areas of mental functioning); *see Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (RFC for unskilled work accounted for moderate limitations with respect to stress); *see Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) ("it is well-settled that a limitation to unskilled work ... sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), *appeal dismissed* (Mar. 30, 2018) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning.").

Therefore, contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Butensky's opinion that Plaintiff had up to moderate limitations in certain areas of mental functioning. Indeed, the ALJ's RFC for unskilled work with additional social limitations is consistent with the mild to moderate limitations provided by the doctor.

**B.     Steps Two and Three**

Plaintiff argues the ALJ erred in her step two determination because she failed to find Plaintiff's generalized anxiety disorder, panic disorder, borderline personality disorder, and PTSD severe impairments. (Dkt. No. 11 at 20-23.) Plaintiff argues the ALJ's step two error was not harmless because each listed impairment has a separate

8

analysis under the Listings at step three. (*Id*. at 22.)  For the reasons outlined herein, the ALJ properly assessed Plaintiff's variously diagnosed mental impairments at steps two and three.  And in the alternative, any error in failing to classify each diagnosed impairment as severe at step two would be harmless error.

If the ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 404.1525(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 404.1509, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 404.1520(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  Although an ALJ may award benefits at step three, a plaintiff who fails to prove his impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four.  *See id.* § 404.1520(e).

As an initial matter, although Plaintiff argues the ALJ erred in her steps two and three determinations, he provides only citations to diagnosis of each individual impairment to support his argument. (Dkt. No. 11 at 21.) The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Tammy C.-J. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01552, 2021 WL 773414, at *3, --F. Supp. 3d --- (W.D.N.Y. Feb. 26, 2021) (internal citation and quotation omitted); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). Therefore, Plaintiff failed to identify any evidence to support his assertion that the ALJ's step two and three analysis was erroneous. *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 277 (W.D.N.Y. 2018) (plaintiff offered "very little argument" to support her contention that her physical and mental impairments qualified as severe).

Although all of Plaintiff's various mental impairment diagnosis were not explicitly discussed at step two and three, the record indicates the ALJ considered evidence of these impairments. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) ("Rivera argues this conclusion is not supported by the record, as he was diagnosed with both anxiety and PTSD. However, even assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both Rivera's severe and non-severe impairments as he worked through the later steps."). The ALJ thoroughly discussed the evidence in the record containing mention of Plaintiff's various mental health impairments, including anxiety disorder, panic disorder, borderline personality disorder, and PTSD. (T. 18-19, 23.)

Because Plaintiff failed to show any additional mental limitations due to diagnosed mental impairments and the ALJ discussed all of Plaintiff's mental impairments throughout her written decisions, any error made at steps two and three was harmless.

C.     **Subjective Complaints**

Plaintiff argues the ALJ impermissibly drew negative inferences about his failure to seek medical treatment. (Dkt. No. 11 at 23-25.) For the reasons outlined below, the ALJ properly evaluated Plaintiff's subjective complaints and substantial evidence supports the ALJ's determination.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or

11

other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Plaintiff asserts the ALJ improperly faulted Plaintiff for not receiving treatment prior to his alleged onset date of October 2016. (Dkt. No. 11 at 24-25.) To be sure, the ALJ noted Plaintiff received no mental health treatment prior to October 2016. (T. 20.) However, as outlined by Defendant, the ALJ made this statement as part of her summary of Plaintiff's treatment history. (*Id.*) The ALJ summarized the whole of Plaintiff's treatment history as provided in the record from 2012 through 2018, and then pointed to evidence of noncompliance during the relevant period. (T. 20, 23.) Indeed, as noted by the ALJ, Plaintiff did not take medications as prescribed, and sometimes self-adjusted it to a lower dosage. (T. 20, 371-372.) Plaintiff was also not compliant with his group therapy sessions and often cancelled, left early, or did not show up. (T. 514, 524, 531, 555.) He refused a partial hospitalization program because he did not want to attend multiple appointments during the week. (T. 513.) He was also "extremely resistant" to obtaining recommended blood work and medical follow-up with a primary care doctor. (T. 21; *see* T. 373, 514, 533, 542.) Therefore, the ALJ did not fault Plaintiff for his failure to seek treatment prior to his onset date.

Plaintiff next argues the ALJ improperly considered his history of drug use in assessing his subjective complaints. (Dkt. No. 11 at 24.) The ALJ discredited Plaintiff's testimony, in part, because Plaintiff was not forthcoming about his drug use and his testimony was inconsistent. (T. 21.) Inconsistencies in the record may be considered in assessing an individual's subjective complaints. 20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

Overall, in making her determination the ALJ considered objective medical evidence, Plaintiff's testimony regarding his activities of daily living; medical treatment received, including medications; and Plaintiff's testimony regarding what he could still do despite his impairments. (T. 20-21.)

The ALJ has the duty to evaluate conflicts in the evidence. *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts,

the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 16, 2021

William B. Mitchell Carter
U.S. Magistrate Judge